UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD DIAZ,

           Petitioner.

– against –

SUPERINTENDENT MATTHEW
THOMS, SUPERINTENDENT OF THE
FIVE POINTS CORRECTIONAL
FACILITY,

           Respondent.

**OPINION & ORDER**

20-cv-00154 (ER)

RAMOS, D.J.:

      Richard Diaz filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2015 conviction, after he was tried in absentia, for robbery and criminal impersonation. Doc. 1. Diaz asserted three claims: (1) ineffective assistance of counsel based on his attorney's representations to the trial court about his absence; (2) deprivation of a fair and impartial jury; and (3) ineffective assistance of counsel based on his attorney's failure to request an inquiry regarding juror bias. *Id.* Matthew Thoms, Superintendent of Five Points Correctional Facility, where Diaz is incarcerated, opposed the petition. Docs. 15–16. The Court referred the petition to Magistrate Judge Sarah Cave for the issuance of a Report and Recommendation ("R&R"). Doc. 9. On November 18, 2022, Magistrate Judge Cave issued the R&R recommending the Court deny the habeas petition. Doc. 31. On December 6, 2022, Diaz objected to the R&R. Doc. 32. For the reasons set forth below, the Court adopts the R&R and DENIES the petition.

I.    **FACTUAL BACKGROUND**

      In the early morning of October 17, 2012, in the area of 2315 Walton Avenue in the Bronx, Diaz, Amauri Santana, and Jose Melenciano approached four people who were walking on the sidewalk: Yohn Contreras, Joel Rodriguez, Argelia Rosario, and

Esmeraldi Rodriguez ("Victims"). Doc. 17 at 102, 1157. Melenciano allegedly knew that Contreras was carrying about $3,000 in cash to buy drugs. *Id.* at 99, 102–03. Diaz displayed a badge on a beaded chain, claimed to be a police officer, and directed the Victims to go up against the wall. *Id.* at 1125. Believing Diaz and his companions to be police officers, the Victims complied. *Id.* at 1161. Santana searched Contreras, taking a wad of cash from Contreras' pocket, while Melenciano searched Joel Rodriguez, and Diaz stood next to Esmeraldi Rodriguez and Argelia Rosario and patted down Rosario's pockets. *Id.* at 1163–64, 1174, 1127.

At approximately 12:15 a.m., New York City Police Department ("NYPD") Officer Edgar Mangual and two other officers drove by 2315 Walton Avenue, and observed four people lined up against a wall and three other people frisking them. *Id.* at 255. Officer Mangual noticed that two of the individuals doing the frisking wore pants that were hanging way below their waist and thus unable to hold a gun belt or any equipment, signifying that they were not police officers. *Id.* As the officers exited the van and approached, Diaz fled the scene, tossing the badge to the street, while Contreras yelled out to the officers that Santana and Melenciano claimed to be police and had taken his cash. *Id.* at 143–48. The officers arrested Melenciano and Santana, who was found to be in possession of the cash that belonged to Contreras. *Id.* at 149. Officer Mangual vouchered the cash, which totaled $6,000.00, for evidentiary purposes. *Id.* at 257. None of the Victims told the officers that Diaz had taken any money from them. *Id.* at 1002.

During questioning by NYPD Detective Chris Rodriguez on the afternoon of October 17, 2012, Melenciano stated that the third individual who was with him and Santana went by the nickname "Villajuana." *Id.* at 8, 257. Based on the nickname and investigation of other information in the possession of the NYPD, Detective Rodriguez showed a photograph of Diaz to Melenciano, who identified Diaz as Villajuana. *Id.* at 8, 59–60. Detective Rodriguez included a photograph of Diaz in a photo array shown to another one of the Victims, Esmeraldi Rodriguez, later that evening. *Id.* at 9–13. She identified Diaz as one of the

2

individuals who had stopped the Victims. *Id.* at 13, 66–67. Detective Rodriguez issued an I-Card[1] and a wanted poster for Diaz. *Id.* at 19–21, 258, 1018–19.

In the early morning hours on November 22, 2012, an NYPD officer with the 34th Precinct Anticrime Unit arrested Diaz based on the I-card. *Id.* at 23, 258, 1023. Detective Rodriguez and Detective Anna Bell took custody of Diaz and transported him to the 108th Precinct in Queens for processing. *Id.* at 24, 1025–26. A search incident to arrest yielded two pills in Diaz's pants pocket, which Detective Rodriguez vouchered as evidence. *Id.* at 25. Detective Rodriguez's investigation showed that Diaz was never a member of the NYPD. *Id.* at 1027. That same morning, Rosario identified Diaz in a line-up as one of the individuals involved in the incident on October 17, 2012. *Id.* at 258–59. Later the same day, Detective Bell gave Diaz his *Miranda* warning, i*d.* at 88, following which he admitted that, on October 17, 2012, he was wearing a badge on a beaded chain, that Melenciano knew that Contreras was carrying $3,000 in cash to buy drugs, and that after he saw the officers stop their van, he walked away, tossing the badge onto Walton Avenue. *Id.* at 99–103.

A. *Arrest and Indictment*

On November 22, 2012, Diaz was arrested and arraigned for robbery and criminal impersonation, and bail was set at $25,000. *Id.* at 655. He was released after posting bond on November 26, 2012. *Id.* On December 14, 2012, a Bronx County grand jury charged Diaz with nine counts, including robbery in the second degree in violation of New York Penal Law § 160.10(1), and criminal impersonation in the first degree in violation of New York Penal Law § 190.26(1). Doc. 15 at 2 ¶ 6.

Approximately two and one-half years later, on July 6, 2015, Justice Ralph Fabrizio of the Bronx County Supreme Court held a *Mapp* hearing.[2] Doc. 17 at 1–129.

---

[1] An I-card lists all pedigree information of the person who is wanted, and if that a person has any police interaction, the central NYPD database will show that the person has an active a warrant.

[2] A *Mapp* hearing is used to determine whether physical evidence sought to be used against a criminal defendant was obtained illegally by law enforcement officers and is thus inadmissible at the criminal defendant's trial. *Mapp v. Ohio*, 367 U.S. 643 (1961).

Diaz was present at the hearing, as was a Spanish translator, but his co-defendants Melenciano and Santana were late. *Id.* at 75–81. Upon their arrival, with Diaz present, Justice Fabrizio gave Melenciano and Santana a *Parker* warning, warning them that if they do not show up or are late for the future proceedings, a warrant would be issued for their arrest.[3] *Id.* at 80–81. Justice Fabrizio declared that "If you're not here when I tell you to be here and we have delays, *and this goes for any of the defendants*, if there are any delays and I issue a warrant for your arrest, when that warrant is vacated I'm going to entertain an application by the district attorney." *Id.* at 81 (emphasis added). Justice Fabrizio then asked Melenciano and Santana, but not Diaz, whether they understood the warning. *Id.* at 81.

The hearing continued on July 8 and 9, 2015. *Id.* at 130–246, 247–76. Diaz was present at the hearing. Detective Rodriguez testified as to the identification and arrest of Diaz, *id.* at 3–74, 132–39, Detective Bell testified as to Diaz's statements during his post-arrest interview, *id.* at 83–114, and Officer Mangual testified about his observation of the robbery. *Id.* at 140–210. At the conclusion of the hearing, Justice Fabrizio denied the motions to suppress in their entirety, finding that: (1) the photo array shown to Victim Esmeraldi Rodriguez and the line-up in which another Victim, Rosario, identified Diaz were not unduly suggestive; (2) there was probable cause to arrest Santana and Melenciano at the scene; and (3) Diaz's statements to Detective Bell were voluntary. *Id.* at 248–76.

On July 9, 2015, Justice Fabrizio held another hearing on the admissibility of Diaz's 2007 conviction for sale of narcotics for which he was sentenced to 30 months' imprisonment and two years of probation. *Id.* at 294–95. Diaz was present for the hearing. *Id.* at 247, 298. Justice Fabrizio ruled that the 2007 conviction was relevant to

---

[3] A *Parker* warning is a judicial warning given in New York criminal proceedings when a defendant requests to be absent from their trial or court hearing, or is at risk of being absent. *People v. Parker*, 57 N.Y.2d 136 (1982).

Diaz's credibility and permitted the prosecution "to ask him whether on May 11, 2007 he was convicted of criminal possession of a controlled substance with intent to sell." *Id.* at 304.  Diaz's attorney, Pat Bonanno, made an oral application to sever Diaz's trial from the other two defendants, as to which Justice Fabrizio heard argument and deferred decision until the next day.  *Id.* at 317–23. When proceedings resumed on July 10, 2015, Diaz was present, and after further argument, Justice Fabrizio severed Diaz from the other two defendants for trial.  *Id.* at 368.

    B.   Trial and Sentencing

At 10:30 a.m. on July 13, 2015, Justice Fabrizio called all three defendants but none was present.  *Id.* at 376–77.  Bonanno stated that he had "reached out three times to Mr. Diaz, left him messages," and "assume[d]" that Diaz believed the start time was 11:00 a.m.  *Id.* at 377.  The prosecution stated that it was prepared to go forward today against Diaz and asked Justice Fabrizio to issue warrants for each defendant.  *Id.* at 378.  Bonanno informed Justice Fabrizio that he attempted to contact Diaz and assumed that Diaz was on his way.  *Id.* at 378–79.  Justice Fabrizio issued warrants and forfeited bail as to all three defendants.  *Id.* at 381.  Melenciano appeared 40 minutes later, but Santana and Diaz did not.  *Id.* at 381–82.

Justice Fabrizio called Diaz's case for trial a second time at 12:30 p.m., but Diaz still was not present.  *Id.* at 389.  Bonanno informed Justice Fabrizio that he spoke with Diaz at approximately 10:45 a.m. and that Diaz was on his way.  *Id.* at 391.  Justice Fabrizio stated that he would call the case again at 2:15 p.m., with a *Parker* hearing to follow.  *Id.* at 392.  Justice Fabrizio proposed to instruct the jury "not to draw any inference from [] the absence of [Diaz]," which Bonanno agreed was "the appropriate thing to say."  *Id.* at 393.

At 12:45 p.m., Justice Fabrizio questioned Bonanno further about Diaz's absence.  *Id.* at 398–99.  Bonanno stated that he made numerous attempts to contact Diaz but Diaz had not responded since the last call.  *Id.* at 398.  Justice Fabrizio stated:

5

> And I had a record from Mr. Bonanno at [10:30 a.m.] that he had left messages and voicemail messages and had reached out to his client and had not heard from him, which is why I just decided to not call for a panel at 11 o'clock for Mr. Diaz. But since that time, now I learn that Mr. Bonanno has had [sic] actually reached out to him, and it appears that he has voluntarily absented himself from these proceedings, unless something dire happened to him and [the District Attorney ("DA")'s] office will find that out . . .

*Id.* at 399. Justice Fabrizio called the case a third time at 2:15 p.m., but Diaz still had not appeared. *Id.* at 400. Justice Fabrizio asked if the parties wanted to supplement the record about his whereabouts. *Id.* Bonanno indicated that when Diaz spoke with him at approximately 10:45 a.m. that morning in "broken English," there might have been some confusion as to whether the hearing was scheduled for 10 a.m. or 11 a.m. *Id.* at 400–02. Bonanno had not heard from Diaz since. *Id.* at 402. Voir dire commenced, and Justice Fabrizio instructed the jury that they "should not draw any inference . . . whatsoever" from Diaz's absence. *Id.* at 402, 405.

Voir dire resumed on July 14, 2015, and Diaz was not present. *Id.* at 469–70. Bonanno stated that he spoke with Diaz after the proceedings ended on July 13, 2025, and informed Diaz of the urgency to appear:

> I told [Diaz] that there's a warrant for his arrest. He has an absolute need to present himself to this court and answer that warrant. That jury selection had begun and I needed his assistance in doing that, and that by presenting himself here he would assist me in that. And he never gave me a definite answer as to if he was going to see me today or come here today, and I just texted him again . . . he did not tell me he was coming. It did not appear he was hospitalized. It did not appear he was in custody from our conversation. I didn't ask him where he was, Judge, no, I did not . . . I told him they're going to come to your house for you, you better come in. There's no reason for you not to come in.

*Id.* at 470–73. Bonanno also informed Diaz that there would be a warrant issued for his arrest and that he should be appear at the court by 10 a.m. that day. *Id.* at 473.

Justice Fabrizio held a *Parker* hearing to decide if the trial continue without Diaz during a pause in jury selection, outside the presence of the jury. *Id.* at 638–61.

6

Detective Investigator Daniel Clark-El, an NYPD officer assigned to the DA's Detective Investigator Squad, testified regarding the steps he and his partner took to locate Diaz, including contacting city, state, and federal detention centers and law enforcement agencies, hospitals, family members, and friends. *Id.* at 638–49. Justice Fabrizio stated that "[i]t's a matter of public record in the case on July 1st that all defendants were what we say *Parkerized*."[4] *Id.* at 650. Bonanno objected on the ground that the DA should "lay the foundation and ask for judicial notice." *Id.* at 651. The DA argued that the Court could make a finding based on the record that Diaz voluntarily absented himself through testimony or his actions. *Id.* Justice Fabrizio proceeded with the *Parker* hearing and found that:

> based on all of the evidence and all of the colloquies that [Diaz] understands that his presence is required, and that he is voluntarily choosing not to be here, which is his right under the constitution. The right to be present at trial also includes the right not to be present at trial, and if he's exercising that right not to be here, that's free and informed, and he's not here. And so, we are not going to stop with our jury selection process now.

*Id.* at 655–60. Over the next two days, voir dire continued and Justice Fabrizio made final evidentiary rulings. *Id.* at 662–914.

On July 20, 2015, trial began, and Diaz was not present. *Id.* at 894, 988. Before opening statements, Justice Fabrizio instructed the jury:

> Now members of the jury, during jury selection and right now you have noticed that there is no one present at the defense table other than the attorney. The defendant is not present in the courtroom. Now, a defendant has a right to be present in the courtroom for any part of the trial or for the entire trial. A defendant also has a right not to be present. Thus, you're not to speculate about the reason for the defendant's absence, nor are you to draw any inference for or against the People because of the defendant's absence.

*Id.* at 917.

---

[4] The *Parker* warning was conducted on July 6, 2015. Doc. 17 at 81.

In the prosecution's case, Officer Mangual, Detective Rodriguez, Detective Bell, and three of the Victims, Rosario, Esmeraldi Rodriguez, and Contreras, testified. On the fifth day of trial, July 28, 2015, the parties gave their summations, and Justice Fabrizio instructed the jury. *Id.* at 1263–1335. In those instructions, Justice Fabrizio stated:

> The defendant is not present in the courtroom. I remind you that a defendant has a right to be present in the courtroom and the right not to be present for all or any part of a trial. Thus, you are not to speculate about the reasons for the defendant's absence, nor are you to draw any inference for or against the defendant or for or against the People from the defendant's absence.

*Id.* at 1304. The jury was charged on four counts: (1) robbery in the second degree; (2) grand larceny in the third degree; (3) grand larceny in the fourth degree; and (4) criminal impersonation in the first degree. *Id.* at 1315.

At the end of the first afternoon of deliberations, Justice Fabrizio asked the jury to return the next morning at 9:30 a.m. and invited the jurors to state whether that time would be a problem. *Id.* at 1350. Juror 3 raised his hand and informed Justice Fabrizio that he had "a court case that [he had] to deal with" and it was "relatively new." *Id.* at 1351. After Justice Fabrizio excused the rest of the jury from the courtroom, Juror 3 disclosed that he had previously been arrested on a charge of "menacing" and had a court appearance the next morning in criminal court. *Id.* at 1351–53. Justice Fabrizio looked up Juror 3's case and discerned that he had been arrested on March 25, 2015 on a charge of third-degree assault, had been arraigned, and had a court appearance on July 29, 2015. *Id.* at 1354–55. Juror 3 acknowledged that he had a lawyer, whose name he did not remember, and that an order of protection had been entered. *Id.* at 1355–56. Justice Fabrizio admonished Juror 3 and instructed him not to discuss their conversation in the courtroom with any other jurors. *Id.* at 1357–61.

After excusing the jury for the day, Justice Fabrizio stated that his "recollection about this juror" was that "he said he had past contact with the police . . . that he had been questioned or stopped by the police in the past but nothing about a pending case." *Id.* at

8

1363–64.  Justice Fabrizio invited Bonanno "to make a record about anything else related to that juror," and Bonanno responded, "[n]ot at this time."  *Id.* at 1364.

The next morning, on July 28, 2015, Bonanno requested that Justice Fabrizio "relieve the alternate jurors at this point," on the ground that New York law required Diaz's "written consent in the presence of the foreperson in open court to the seating of an alternate juror once deliberations have begun."  *Id.* at 1365–67.  After some discussion, Justice Fabrizio declined "to discharge the alternates," and noted that the "bottom line is no one is asking me to discharge juror number three."  *Id.* at 1372.

At the end of the second day of deliberations, July 29, 2015, the jury reached a verdict, finding Diaz guilty of robbery in the second degree and criminal impersonation in the first degree.  *Id.* at 1380.

On September 11, 2015, Justice Fabrizio held a sentencing proceeding, at which Diaz was not present.  *Id.* at 1384–1409.  Bonanno objected to Diaz "being sentenced in absentia as a second felony offender" based on the 2007 conviction.  *Id.* at 1386.  Justice Fabrizio determined that it was "not improper to judge a defendant a second [] felony offender in-absentia," and conducted an arraignment on the predicate felony.  Justice Fabrizio, finding that Diaz "waived his right personally to challenge his adjudication," noting his prior "findings that [Diaz] had voluntarily absented himself," and adjudicated Diaz "in-absentia a second felony offender" based on the 2007 conviction.  *Id.* at 1387.  Justice Fabrizio then sentenced Diaz to twelve years' imprisonment on the robbery count, followed by five years of post-release supervision, and an indeterminate term of two to four years' imprisonment on the criminal impersonation count, both sentences to run concurrently.  *Id.* at 1408; *see* Doc. 15 at 3 ¶ 7.

C.  Direct Appeal

On May 8, 2018, represented by the Office of the Appellate Defender and Dechert LLP, Diaz appealed to the Supreme Court of the State of New York, First Department ("First Department"), asserting:  (1) ineffective assistance of counsel based on Bonanno's

9

factual representations against Diaz's interest on which Justice Fabrizio relied in concluding that Diaz had voluntarily absented himself from trial; (2) deprivation of the constitutional right to a fair and impartial jury based on the failure to conduct an inquiry and discharge Juror 3 for misconduct; and (3) ineffective assistance of counsel based on Bonanno's failure to request an inquiry concerning Juror 3's bias and to request that Juror 3 be excused for misconduct. Docs. 15 at 3 ¶ 8; 15-1 at 1–39. On June 4, 2018, Diaz filed a *pro se* supplemental appellate brief in which he reiterated the three claims raised and added a claim challenging the sufficiency of the evidence on which he was convicted. Doc. 15-1 at 41–56.

On February 14, 2019, the First Department unanimously affirmed the judgment. *People v. Diaz*, 169 A.D.3d 502 (1st Dep't 2019) ("*Diaz I*"). As to the ineffective assistance of counsel claims, the First Department deemed these claims unreviewable on direct appeal because they involve matters not reflected in, or fully explained by, the record, and since Diaz had not made a N.Y. Criminal Procedure Law § 440.10 motion, [5] the merits of the ineffectiveness claims may not be addressed on appeal. *Id.* at 502. Based on the existing record, however, the First Department held in the alternative that Diaz "received effective assistance under the state and federal standards," and had "not shown that any of counsel's alleged deficiencies fell below an objective standard of reasonableness, or that, viewed individually or collectively, they deprived [Diaz] of a fair trial or affected the outcome of the case." *Id.* The court added that Bonanno's "candid responses to the court's inquiries about [Diaz's] absence from court" were "consistent with his ethical duties, and he neither became a witness against his client nor was otherwise ineffective," given that Diaz "had no legitimate interest in absconding from trial." *Id.* at 503. The court similarly found that the ineffective assistance claim based on Bonanno's failure to object to Juror 3's continued participation was also unreviewable,

---

[5] A New York Criminal Procedure Law § 440.10 motion is a post-conviction motion used to challenge the validity of a judgment of conviction in New York State court.

10

and, in the alternative, without merit because Bonanno "acted reasonably, in light of the court's own extensive inquiry, the lack of any evidence of gross disqualification, and the possibility that the juror's own status as a defendant might have rendered him more favorable to the defense." *Id.* The court added that Diaz had failed to establish prejudice from Bonanno's failure to object. *Id.*

The First Department also declined, due to lack of preservation, to review Diaz's claim that Justice Fabrizio should have discharged Juror 3 or conducted further inquiry, but in the alternative, found the claim without merit because Justice Fabrizio "conducted a sufficient inquiry into the matter, which provided no basis for a finding that the juror was grossly unqualified." *Id.*

Represented by Office of the Appellate Defender, Diaz applied to the Court of Appeals for leave to appeal on the issue of "when an attorney's representations to the court result in a conflict of interest." Docs. 15 at 6–7 ¶¶ 11–12; 15-4; 15-5. On May 24, 2019, the Court of Appeals denied the Application. *People v. Diaz*, 33 N.Y.3d 1030 (2019) ("*Diaz II*").

D. Post-Judgment Motion

On November 3, 2020, Thoms notified the Court that Diaz had filed a motion pursuant to N.Y. Criminal Procedure Law § 440.10 in the Supreme Court, Bronx County, arguing that Bonanno was ineffective because he: (1) took an adverse position to Diaz, became a witness against him, and created a conflict of interest by telling Justice Fabrizio that Diaz intended to miss the trial; and (2) took an adverse position to Diaz by failing to request a hearing or the removal of Juror 3. Doc. 25. The DA opposed the motion on the grounds that Diaz's claims were procedurally barred and meritless. Doc. 29 at 2.

On March 15, 2021, Justice Fabrizio denied the § 440.10 motion. Doc. 29 at 2–10. First, Justice Fabrizio rejected Diaz's contention that the court should have *sua sponte* replaced Bonanno because Diaz never asked that Bonanno be replaced, and given that the argument was "solely record-based" and could have been raised on direct appeal,

11

the claim was "procedurally barred from being raised via this 440.10 motion." *Id.* at 3 (internal citation omitted).

Second, Justice Fabrizio found that Bonanno's responses to his "routine inquiries" regarding Diaz's whereabouts, given that the "*Parker* warnings were administered," did not mean that Bonanno was "taking a position against his client." Doc. 29 at 4. Justice Fabrizio noted that, "as the day dragged on, it was [Diaz's] non-appearance that indicated perhaps he had chosen not to be present." *Id.* at 5. Justice Fabrizio determined that Bonanno could not "be called ineffective for providing the measured response[s] to this Court's legitimate inquiry aimed at determining whether to proceed in absentia or delay a trial in a three-year-old matter based on a guess about whether [Diaz] might actually appear again." *Id.* In addition, although Diaz asserted in his affidavit that Bonanno told the court that Diaz "intended to miss the trial" and "abscond from trial," the trial transcript showed Bonanno said no such thing. *Id.* Accordingly, because Diaz failed to state any credible facts to support the motion, Justice Fabrizio found that this ineffective assistance claim was procedurally barred and without merit. *Id.* at 5–6.

Third, Justice Fabrizio noted that Diaz failed to raise on direct appeal the claim that Bonanno was ineffective for failing to request that Juror 3 be excused. Doc. 29 at 6. Noting the First Department's finding that such a request lacked merit, Justice Fabrizio held that Diaz failed to "show that his attorney provided ineffective representation in not making a motion that would have been denied on the merits. If anything, attorneys are effective when they make non-frivolous motions." *Id.* at 6–7. Justice Fabrizio concluded that Bonanno's "decision to keep this juror at this time, which has never been raised as evidence of ineffective representation, leads only to one conclusion: that counsel's strategy to represent his absconding client included having Juror Number 3 as one of the twelve deliberating jurors, given there was no evidence of bias." *Id.* at 7. Justice Fabrizio added that Bonanno's "overall representation . . . was by any measure constitutionally effective," noting Bonanno's "zealous[]" argument during the first

12

hearing, successful motion to sever, voir dire challenges, effective cross-examination, and "vigorous closing argument." *Id.* at 8–9.

Finally, after summarizing the "overwhelming" evidence, Justice Fabrizio explained that there was no "lack of confidence in the correctness of this verdict." Doc. 29 at 9–10. Accordingly, Justice Fabrizio denied the motion. *Id.* at 10.

II.     **PROCEDURAL BACKGROUND**

On December 6, 2019, Diaz filed the instant federal habeas corpus petition, alleging that he was deprived of: (1) the effective assistance of conflict-free counsel when his attorney made factual representations to the court suggesting that Diaz voluntarily absented himself from trial, and where the court relied on counsel's representations; (2) the right to a fair and impartial jury where it became apparent that Juror 3 made a material misrepresentation during voir dire, and, when the misrepresentation was revealed during deliberations, where the Court failed in its responsibility to discharge Juror 3 for substantial misconduct or conduct a "probing and tactful" inquiry to determine the partiality of Juror 3; and (3) the effective assistance of counsel where his attorney failed to inquire about Juror 3's bias and to request to excuse Juror 3. Doc. 1 at 9.

Thoms argues that Diaz failed to exhaust the two ineffective assistance claims, and, in any event, the First Department's decision in *Diaz I* did not unreasonably apply Supreme Court precedent in rejecting these claims. Doc. 16 at 25–43. Thoms also argues that Diaz's claim that Justice Fabrizio should have discharged Juror 3 was decided on an adequate and independent state ground and therefore unreviewable, and the First Department's alternative rejection of this claim on the merits was not unreasonable. *Id.* at 44–56.

On November 18, 2022, Judge Cave issued the R&R recommending the Court deny Diaz' habeas petition. Doc. 31. Specifically, Judge Cave ruled that: (1) Diaz's ineffective assistance claims are procedurally barred due to failure to exhaust them in the

13

state courts, Doc. 31 at 30; (2) Diaz has shown neither an actual conflict, nor prejudice from any potential conflict, *id.* at 37; (3) the First Department's rejection of Diaz's ineffective assistance claim based on Bonanno's failure to challenge Juror 3 "was neither contrary to, nor an unreasonable application of the *Strickland* standard," and "habeas corpus relief is not warranted on this claim," *id.* at 39–40; (4) Diaz's claim based on the failure to remove Juror 3 or conduct a further inquiry is procedurally barred because the First Department's decision rested on the adequate and independent state law ground of lack of preservation, *id.* at 31; (5) Diaz has not demonstrated that Justice Fabrizio's decision to retain Juror 3 was manifest error resulting in an unreasonable determination of the facts, *id.* at 38–39; and (6) Diaz did not show good cause to permit discovery and that an evidentiary hearing is unnecessary, *id.* at 47.

Although Diaz did not timely file his objection within fourteen days after the R&R has been issued, Doc. 32, the Court construes Diaz's submission liberally and acknowledges that an objection to the R&R has been properly filed.

Diaz argues that Judge Cave misapplied the facts of his case in determining ineffective assistance of counsel. *Id.* Specifically, he argues for the first time that the trial court did not specifically give him a *Parker* warning at the July 6, 2015 hearing and that, even if the judge warned him, he was not fluent in English. *Id.* at 2. Diaz also requests an evidentiary hearing to decide if there was an actual conflict between himself and Bonanno. *Id.* at 3.

III. **STANDARD OF REVIEW**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.; see also* Fed. R. Civ. P. 72(b)(2). A district court reviews de novo those portions of the report and recommendation to which timely and specific objections are

14

made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

While the Second Circuit has not yet determined whether a new legal argument may be raised in an objection to a report and recommendation, "[m]any district courts in this Circuit hold that new arguments and factual assertions cannot properly be raised for the first time in objections to the R&R, and indeed may not be deemed objections at all." *Markey v. Lapolla Indus., Inc.*, No. 12 Civ. 4622 (JS)(AKT), 2017 WL 4271560, at *5 (E.D.N.Y. Sept. 26, 2017) (quoting *Cabrera v. Schafer*, No. 12 Civ. 6323, 2017 WL 1162183, at *2 (E.D.N.Y. Mar. 27, 2017)) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

Diaz asserts that English is not his first language and that he is not fluent in English, an argument he did not raise in his habeas petition. Doc. 32 at 1–2. Even if the Court were to entertain this argument, *see Markey*, 2017 WL 4271560, at *5, Diaz's attempt fails for two reasons. Diaz contends that the trial court only read the *Parker* warning to his co-defendants, but not to him, at a hearing where he also happened to be present. Doc. 32 at 3–6. However, when giving Melenciano and Santana the *Parker* warning, Justice Fabrizio made it clear that "this goes for any of the defendants." Doc. 17 at 81. Further, a Spanish language translator was present at the July 6, 2015 hearing. *Id.* at 75. Because Diaz was provided with an interpreter during court proceedings, he cannot later claim a lack of understanding due to limited English proficiency as a basis to invalidate or object to those proceedings. *Henareh v. United States*, No. 114 Cr. 7145

(JSR) (SDA), 2018 WL 3468715, at *15 (S.D.N.Y. June 8, 2018), report and recommendation adopted, No. 11 Cr. 93(JSR), 2018 WL 3462508 (S.D.N.Y. July 18, 2018) ("[C]ounsel not ineffective for failing to raise language barrier issue when defendant was provided with translator in his native language and participated in trial without notifying court of any problem."). Accordingly, Diaz's objection based on his English fluency and the alleged failure to receive the *Parker* warning directly is overruled.

Diaz also asserts that Judge Cave or the lower court should hold an evidentiary hearing and question Bonanno. Doc. 32 at 3. Diaz argues that the lower court, appellate court, and Judge Cave speculated on Bonanno's strategy and whether there was an actual conflict between him and his counsel. *Id.* at 3. Diaz further argues that Justice Fabrizio's inquiries into his whereabouts "created a clear conflict between" Bonanno and him and that Bonanno never asserted attorney client privilege. *Id.* at 3–4. Thoms contends that: (1) the courts did not speculate on Bonanno's strategy and the record shows that Bonanno preferred that Diaz present for trial; and (2) Diaz voluntarily absented himself from trial. Doc. 38 at 1.

Instead of "catering to Ju[stice] Fabrizio and trampling all over [Diaz]'s privilege," Doc. 32 3–4, as Diaz suggests in his objection, the record reflects that Bonanno consistently advocated for additional time to allow Diaz to appear before proceeding with a trial in absentia. Starting on the very first morning of voir dire, Bonanno made multiple attempts to contact Diaz and informed him of the gravity of not being present in the court. Doc. 17 at 378–79. Bonanno also informed Justice Fabrizio that Diaz was en route and successfully persuaded the Court to adjourn the proceedings from 10:30 a.m. to 2:15 p.m., securing approximately four additional hours for Diaz to appear. *Id.* at 381–99. Bonanno also objected to the *Parker* hearing on July 14, 2025 and objected to sentencing Diaz *in absentia* on September 11, 2015. *Id.* at 1384–1409.

16

However, despite Bonanno's efforts, Diaz failed to show up at all for his trial or for his sentencing. *Id.* at 378–1409.

Additionally, the fact that attorneys owe a duty to both their client and the court does not create a conflict of interest. *Amato v. United States*, No. 3 Cr. 1382-13 (NGG), 2017 WL 1293801, at *19 (E.D.N.Y. Apr. 6, 2017), *aff'd*, 763 F. App'x 21 (2d Cir. 2019) (quoting *Torres v. Donnelly*, 554 F.3d 322, 326 (2d Cir. 2009)). After Diaz's failure to appear caused an approximately four-hour delay on the first day of voir dire and his continued absence on the second, Justice Fabrizio reasonably inquired into Diaz's whereabouts. Bonanno responded with factual information regarding the timing of his last communications with Diaz and acknowledged that he had not asked for Diaz's specific location. These responses did not reveal case strategy or any substantive defense. The Court agrees with *Diaz I* that Bonanno's candid responses to Justice Fabrizio's inquiries about his whereabouts were "consistent with his ethical duties" and did not create a conflict of interest. Doc. 17 at 503.

Accordingly, the Court finds that Judge Cave appropriately applied the facts of his case in determining ineffective assistance of counsel regarding the *Parker* warning and the determination of an actual conflict between Diaz and Bonanno.

## V.  CONCLUSION

The Court has carefully reviewed Judge Cave's thorough and well-reasoned R&R and finds no error, clear or otherwise. Accordingly, the Court adopts the R&R in its entirety. Diaz's habeas corpus petition is thus denied.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from the Opinion and Order issued on January 3, 2025, would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that appellant demonstrates good faith when seeking review of a nonfrivolous issue).

It is SO ORDERED.

Dated:   June 13, 2025
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.